UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JESSE PERRY,

                    Plaintiff,

v.                                                                           1:23-CV-1573
                                                                             (GTS/PJE)
JENNIFER CLEMENT, Commissioner Albany
County Department of Human Resources;[1] EDWARD
DUDEK, Assistant Director Albany County
Department of Social Services – Child Support
Enforcement; ANTHONY SIDOTI, Retired Support
Investigator Albany County Department of Social
Services – Child Support Enforcement; LARA
CORMITHIER, Coordinator Albany County
Department of Social Services – Child Support
Enforcement; STEPHEN McCARTHY, Senior
Support Investigator Albany County Department of
Social Services – Child Support Enforcement; GARY
LOMBARDO, Support Investigator Albany County
Department of Social Services – Child Support
Enforcement; EMILY BERLIN, Senior Support
Investigator Albany County Department of Social
Services – Child Support Enforcement also known as
Emily Satalino; CARMEN INCO, Retired Senior
Support Investigator Albany County Department of
Social Services – Child Support Enforcement;
KATHLEEN MATEO, Support Investigator Albany
County Department of Social Services – Child Support
Enforcement; and ERIKA POLAND, Support
Investigator Albany County Department of Social
Services – Child Support Enforcement,

_____

[1]        There is some question about whether Plaintiff intended to name Jennifer Clement in her
official capacity as the Commissioner of the Albany County Department of Human Resources
("Department of Human Resources"), or the Department of Human Resources itself; notably, he
lists the Department of Human Resources in the caption of his Amended Complaint, but then
lists Jennifer Clement as Commissioner as a party within that Amended Complaint.  (Dkt. No. 8,
at 1.)  Because of the Plaintiff's *pro se* status and the fact that Title VII claims cannot be brought
against individuals even in their official capacities, *Owens v. New York State Dep't of Corrs. and
Cmty. Supervision*, 24-CV-1037, 2025 WL 1795063, at *9 (N.D.N.Y. June 30, 2025) (Nardacci,
J.), the Court will liberally construe Plaintiff's Amended Complaint as asserting his claims
against the Department of Human Resources.

Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

JESSE PERRY
   *Pro Se* Plaintiff
436 Livingston Avenue
Albany, NY 12206

ALBANY COUNTY ATTORNEY'S OFFICE          SIA Z. GOOGAS, ESQ.
   Counsel for Defendants
112 State Street
Albany, NY 12207

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment discrimination action filed *pro se* by Jesse Perry ("Plaintiff") against the Albany County Department of Human Resources ("Department of Human Resources"), Edward Dudek, Anthony Sidoti, Lara Comithier, Stephen McCarthy, Gary Lombardo, Emily Berlin/Satalino, Carmen Inco, Kathleen Mateo, and Erika Poland (collectively "Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and/or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 17.)  For the reasons set forth below, Defendants' motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts eight causes of action: (1) a claim of discrimination and harassment based on race in violation of Title VII of the Civil Rights Act of 1964 ("First Claim"); (2) a claim of retaliation resulting from his complaint to the Albany

County Division of Affirmative Action about discrimination and harassment based on his race in violation of Title VII ("Second Claim"); (3) a claim of hostile work environment based on his race in violation of Title VII ("Third Claim"); (4) a claim of hostile work environment in violation of 42 U.S.C. § 1981 ("Fourth Claim"); (5) a claim that Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 703(a)(2) by failing to provide him his annual employee evaluation ("Fifth Claim"); (6) a claim of retaliation resulting from his filing of complaints against Defendant Sidoti, Defendant Dudek, and Defendant Comithier on December 4, 2018, July 9, 2020, and March 25, 2021, respectively ("Sixth Claim"); and (7) a claim that Defendants made false statements to a federal agency in violation of 18 U.S.C. § 1001 ("Seventh Claim").[2] (*See generally* Dkt. No. 8.)  The specific factual allegations underlying the above claims will be discussed in more detail as relevant when the Court assesses the merits of Defendants' motion.

### B.     Parties' Briefing on Defendants' Motion to Dismiss

#### 1.     Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants make seven arguments.  (Dkt. No. 17, Attach. 3.)  First, Defendants argue that many of Plaintiffs' allegations related to his claims asserted pursuant to Title VII and Section 1981 are untimely.  (*Id.* at 13-16.)  Specifically, Defendants argue that Plaintiff filed his charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on June 22, 2022, and therefore any alleged conduct that

---

[2]     Plaintiff also asserts a claim that the continuing-violation doctrine applies to his Title VII claims.  However, because this does not constitute a separate cause of action, the Court will consider the legal question of whether the continuing-violation doctrine applies when discussing Plaintiff's Title VII claims.

occurred more than 300 days before that date (which would be August 26, 2021) should be considered time-barred as to his Title VII claims.  (*Id.* at 13.)  Defendants also argue that some of Plaintiff's allegations of discrimination under 42 U.S.C. § 1983[3] are also untimely as to that claim because the relevant statute of limitations is three years, and some aspects of the claim accrued more than three years before the filing of the Complaint.  (*Id.* at 13-15.)  Defendants further argue that the continuing-violation doctrine is inapplicable because Plaintiff's allegations do not plausibly suggest a unified discriminatory policy or practice underlying the actions of the individual Defendants upon which the claims are based.  (*Id.* at 15-16.)

Second, Defendants argue that the claims against the individual Defendants should be dismissed, because (a) the factual allegations are so disjointed that they fail to provide fair notice of the specific claims against each individual Defendant, (b) the timely allegations are insufficient to state a claim against any of those Defendants, (c) Title VII does not permit claims against individual Defendants, and (d) the factual allegations do not plausibly suggest that the individual Defendants were either acting under the color of law or personally involved as to a Section 1983 claim.  (*Id.* at 17-18.)

Third, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim of discrimination based on race, because the timely allegations do not suggest that any actions taken or comments made were discriminatory.  (*Id.* at 18-20.)

Fourth, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim of retaliation, because he has not alleged any timely adverse employment action following

---

[3]    Defendants interpret Plaintiff's Section 1981 claims as arising under Section 1983 (out of special solicitude to him) because that is the more appropriate statute giving rise to the "Section 1981" claims Plaintiff has asserted.

a complaint regarding his co-workers' or supervisors' conduct, much less any causal link between such action and his complaint (as opposed to a causal link between such action and other factors).  (*Id.* at 21-23.)

Fifth, Defendants argue that, in any event, Plaintiff's hostile work environment claims must be dismissed, because (a) the Court lacks subject-matter jurisdiction over those claims given that they are not addressed in his EEOC charge, or reasonably related to the claims in the charge, and (b) even if those claims were considered, Plaintiff has not plausibly alleged the existence of a hostile work environment given that the facts alleged do not plausibly suggest that any harassing conduct was based on his race   (*Id.* at 23-27.)

Sixth, Defendants argue that Plaintiff's claims related to unlawful employment practices and false information must be dismissed, because Plaintiff has not alleged that any failure to provide him with performance evaluations was discriminatory or deprived him of any employment opportunities, and he cannot assert a private cause of action to enforce a criminal statute as to the purported false claims to the EEOC. (*Id.* at 27-28.)

Seventh, Defendants argue that dismissal with prejudice is warranted because Plaintiff has already amended the pleadings once and there is no further amendment that would entitle him to relief.  (*Id.* at 28-29.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff makes four arguments.  (Dkt. No. 22, Attach. 1.)  First, Plaintiff argues that his allegations related to his Title VII and Section 1983 claims should be found timely because, as to his Title VII claim, he attempted to file his EEOC charge at least one month earlier than he did, and evidence shows that he asked the EEOC

investigator "about the earliest and latest dates that discrimination took place," and as to his Section 1983 claim, he has alleged that Defendants' conduct meets the requirements for supervisory personal involvement. (*Id.* at 10-13.) Plaintiff also argues that the continuing-violation doctrine applies to any otherwise untimely conduct, because that conduct was all part of the same unlawful employment practice. (*Id.* at 13-14.)

Second, Plaintiff argues that the claims against the individual Defendants should not be dismissed. (*Id.* at 14-15.)

Third, Plaintiff appears to generally deny other arguments asserted by Defendants (including whether he has stated plausible claims of discrimination, retaliation, and hostile work environment, and whether his other claims are cognizable), but he provides nothing more than conclusory statements in support of those denials. (*Id.* at 15-16.)

Fourth, Plaintiff argues that dismissal without prejudice is not warranted, because a jury could find, based on the relevant facts, that Defendants acted against him in a discriminatory, retaliatory, and hostile manner. (*Id.* at 16-17.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply, Defendants make three arguments. (Dkt. No. 24.) First, Defendants argue that the Court may not consider or incorporate a "failed charge of discrimination" that Plaintiff submitted to the EEOC that was not part of his Amended Complaint. (*Id.* at 5.)

Second, Defendants argue that the claims against the individual Defendants should be dismissed because, again, such claims are not permitted under Title VII, and Plaintiff has not alleged that any of the individual Defendants took any adverse action against him or were otherwise personally involved in the alleged violations. (*Id.* at 6-7.)

Third, Defendants argue that Plaintiff's Amended Complaint should be dismissed with prejudice, because he has not alleged, and cannot allege, facts plausibly suggesting the relevant claims, especially given there is nothing to substantiate his assertions that the various actions he alleges Defendants took were part of the same unlawful employment practice. (*Id.* at 7-8.)

## II.     GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

9

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[4]

---

[4]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

III.    ANALYSIS

   A.    **Whether Plaintiff's Fifth and Seventh Claims Should Be Dismissed**

   After careful consideration, the Court answers the above question in the affirmative for

the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and I.B.3 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

   As to Plaintiff's Fifth Claim, it is not entirely clear what the legal basis for this claim is.

Plaintiff asserts the claim purportedly under Title VII, but it is not clear that Title VII covers the

alleged conduct.  Title VII specifies that covered unlawful employment practices involve (a)

failing or refusing to hire or to discharge an individual, or otherwise discriminating against an

individual "with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin," or (b) limiting,

segregating, or classifying employees or applicants for employment in a way that would "deprive

or tend to deprive any individual of employment opportunities or otherwise adversely affect his

status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a).  As a result, any claim under Title VII requires some showing that the

unlawful employment practice taken by the employer was because of a protected characteristic.

   Plaintiff alleges that Defendant Dudek violated the terms of his union contract by failing

to provide Plaintiff with his annual employee evaluation, but does not allege that this failure was

based on his race (or any other protected characteristic) or in retaliation for timely protected

---

defendant's motion to dismiss, without converting the proceeding to one for summary

judgment.") (internal quotation marks and citation omitted).

activity.[5]  Moreover, to the extent these allegations could be construed, in the alternative, as giving rise to a breach-of-contract claim, Plaintiff has not provided allegations sufficient to state such claim given that he does not allege any facts plausibly suggesting what provisions that contract contains or that any breach of those provisions' terms caused him to be harmed.  *See Nichols v. BAC Home Loans Servicing LP*, 13-CV-0224, 2013 WL 5723072, at *9 (N.D.N.Y. Oct. 18, 2013) (Hurd, J.) (dismissing breach-of-contract claim in part because the plaintiff failed to identify any provisions of the contract that were violated).  Notably, a provision of the purported agreement that Plaintiff does reference in the Amended Complaint indicates that, if the required evaluation has not been completed within sixty days after the employee's anniversary date, "the employee will be deemed to 'meet normal requirements of the job' unless the evaluation immediately preceding was 'generally exceeds normal requirements of the job' in which case the employee will be deemed to have been rated the latter."  (Dkt. No. 8, at 36.) Thus, accepting Plaintiff's allegation that Defendant Dudek failed to provide an annual employee evaluation of Plaintiff as true, under the terms relied on by Plaintiff, he would necessarily be deemed as having met the normal requirements of his job, and thus he has not alleged any sort of harm or damage resulting from the failure to provide an annual evaluation.  *See Wiener v. AXA Equitable Life Ins. Co.*, 113 F.4th 201, 214 (2d Cir. 2024) (indicating that damages are an

---

[5]    To the extent the Court might construe these allegations as claiming that Defendant Dudek failed to provide the evaluation in retaliation for Plaintiff making complaints about discriminatory treatment, such claim would not be cognizable, because (a) Defendant Dudek, as an individual, is not liable under Title VII, and (b) no allegations in the Amended Complaint plausibly suggest that not being provided with that annual evaluation rose to the level of an adverse employment action (especially given that Plaintiff does not allege how that failure even impacted him).

essential element of a breach-of-contract claim under New York law, and that a defendant can be liable only for damages that actually follow or may follow from the breach of the agreement).

This same claim also appears to assert that Defendant Dudek engaged in an unlawful employment practice by telling Plaintiff to "be careful what you say" to Defendant Cormithier because her boyfriend was good friends with Defendant Sidoti, and by asking Plaintiff to not inform Mark Horan about harassment and attempts by Defendant Sidoti to assault him.  (Dkt. No. 8, at ¶ 301.)  Although Plaintiff does not include dates of when these alleged practices happened, his other allegations appear to plausibly suggest that this aspect of his claim is time-barred, as will be discussed below, because the conduct by Defendant Sidoti ended in 2019 when Defendant Sidoti was transferred to a different unit within Albany County.  (Dkt. No. 8, at ¶¶ 97-99.)  Therefore, to the extent Plaintiff is attempting to assert some other sort of claim under Title VII beyond discrimination, retaliation, and harassment related to Defendant Dudek's alleged conduct, such a claim is time-barred.

As to Plaintiff's Seventh Claim, Plaintiff asserts that Defendants Comithier, Lombardo, Poland, Berlin/Satalino, and Mateo knowingly made materially false statements to the EEOC in violation of 18 U.S.C. § 1001.  (Dkt. No. 8, at ¶¶ 310-17.)  However, this criminal statute does not provide Plaintiff with any valid civil cause of action.  *See Conway v. Garvey*, 135 F. App'x 485, 486 (2d Cir. 2005) (finding that the plaintiff had no standing to assert a civil claim under 18 U.S.C. § 1001); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 244 (N.D.N.Y. 2019) (Hurd, J.) (noting that "the law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual"); *Canning v. Hofmann*, 15-CV-0493, 2015 WL 6690170, at *8 (N.D.N.Y. Nov. 2, 2015) (Treece, M.J., Hurd, J.) (dismissing certain claims because

13

"Plaintiff cannot maintain any civil cause of action pursuant to the criminal statutes listed in Title 18 of the United States Code").

For all of the above-stated reasons, Plaintiff's Fifth and Seventh Claims are dismissed.

**B.    Whether Plaintiff's Fourth Claim is Properly Asserted Pursuant to 42 U.S.C. § 1981**

After careful consideration, the Court answers the above question in the negative as to Defendant Department of Human Resources (to the extent Plaintiff intended to assert this claim against any of the individual Defendants in their official capacities), but in the affirmative as to the individual Defendants in their individual capacities for the reasons that follow.

Plaintiff has asserted a claim of hostile work environment against certain individual and supervisory Defendants pursuant to 42 U.S.C. § 1981.  Specifically, Plaintiff alleges that (a) Defendants Dudek and Comithier, acting as supervisors, had direct knowledge of the hostile work environment to which Plaintiff was subjected, but both failed to take appropriate actions to remedy that environment and directly participated in its maintenance, and (b) Defendants Sidoti, McCarthy, Inco, Lombardo, Poland, Berlin/Satalino, and Mateo directly participated in the maintenance of the hostile work environment.  (Dkt. No. 8, at ¶¶ 286-92.)

The Court agrees with Defendants that Plaintiff's claim as pled is not properly asserted pursuant to Section 1981 as to Defendant Department of Human Resources or any of the individual Defendants in their official capacities.  The Second Circuit has explicitly held that Section 1981 "does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989) (finding that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors

14

alleging violation of their rights declared in § 1981").  Therefore, to the extent that any the relevant Defendants are being sued in their official capacities or capacity as state actors (particularly Defendant Department of Human Resources, which is part of the Albany County Department of Social Services), Section 1981 would not be the appropriate vehicle for suit, and such claims must be dismissed.

As Defendants acknowledge, 42 U.S.C. § 1983 could constitute a vehicle for these claims to the extent Plaintiff attempts to assert them under Section 1981.  In light of Plaintiff's *pro se* status, and because the Amended Complaint contains factual allegations that could be construed as providing a basis for a hostile work environment claim pursuant to Section 1983, the Court will consider whether the Amended Complaint plausibly suggests such claim in place of the Section 1981 claim.  The Court will discuss that claim in conjunction with the Title VII hostile work environment claim, because both claims are subject to essentially the same analytical standards.

However, to the extent the Amended Complaint is construed as asserting claims against the Defendants in their individual capacities, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224-25 (2d Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 [2d Cir. 2000]).  The Second Circuit has concluded that an at-will employment agreement that is governed by New York law constitutes a contract for the purposes of a Section 1981 claim. *Whidbee*, 223 F.3d at 68 (citing *Lauture v. IBM*, 216 F.3d 258 [2d Cir. 2000]).  It has also determined that Section 1981 encompasses claims for hostile work environment based on race against individuals. *Whidbee*,

223 F.3d at 68-73.  As a result, Plaintiff's claims against those individual defendants can be

properly brought pursuant to Section 1981.  Because a hostile work environment claim brought

pursuant to Section 1981 is subject to essentially the same analysis as the hostile work

environment claims brought pursuant to Title VII and (to the extent such a claim is inferred from

the Amended Complaint) Section 1983, the Court will discuss whether Plaintiff has met the

pleading standard for this claim in conjunction with the others below.

C.     **Whether Plaintiff's Claims Pursuant to Title VII, Section 1981, and Section 1983 Should Be Dismissed**

    After careful consideration, the Court answers the above question in the affirmative for

the reasons stated in Defendant's memorandum of law.  *See, supra,* Parts I.B.1 and I.B.3 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

    As an initial matter, it is well-recognized that "'individuals are not subject to liability

under Title VII.'"  *McNamara v. Cnty. of Saratoga*, 748 F. Supp. 3d 68, 88 n.4 (N.D.N.Y. 2024)

(quoting *Buon v. Spindler*, 65 F.4th 64, 78 [2d Cir. 2023]); *see also Patterson v. Cnty. of Oneida,*

*N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (noting this principle applies even where the individual

defendant had supervisory control over the plaintiff) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295,

1313 [2d Cir. 1995]).  As a result, any Title VII claim asserted against the individual Defendants

must be dismissed.[6]  Although, as was discussed above, there is some ambiguity as to whether

Plaintiff has asserted claims against the Department of Human Resources itself or rather against

---

[6]      This dismissal applies to the extent such claims were intended to be asserted against the
individual Defendants in either their personal or official capacities.  *See Barton v. Warren Cnty.*,
19-CV-1061, 2020 WL 4569465, at *11 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) (citing
*Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410 [E.D.N.Y. 2010]); accord *Syed v.*
*NYCHHC Kings Cnty. Hosp.*, 24-CV-1624, 2025 WL 895384, at *3 (E.D.N.Y. Mar. 24, 2025);
*Snowden v. Southerton*, 22-CV-0514, 2023 WL 3601654, at *4 (S.D.N.Y. May 23, 2023).

that department's Commissioner, Jennifer Clement, the Court will liberally construe the claims

as being asserted against the institutional defendant out of special solicitude for Plaintiff's *pro se*

status.

Before discussing whether Plaintiff has alleged facts to plausibly suggest his various

claims, there are two preliminary matters that must be addressed that will affect the Court's

assessment of those claims.  First, as to the Title VII hostile work environment claim, Defendants

argue that Plaintiff has not exhausted his administrative remedies because (a) that specific claim

was not asserted or mentioned in his EEOC charge, and (b) it is not reasonably related to the

discrimination alleged in the EEOC charge.  (Dkt. No. 17, Attach. 3, at 23-24.)  Although

Plaintiff did not append a copy of the EEOC charge to the Amended Complaint, Defendants have

provided one with their motion, which the Court may consider because such document is integral

to the Amended Complaint (and because Plaintiff has not challenged the authenticity or accuracy

of the document).  *See Orsaio v. New York State Dep't of Corrs. and Cmty. Supervision*, 17-CV-

0685, 2017 WL 11269341, at *4 (N.D.N.Y. Nov. 2, 2017) (Sannes, J.) (noting that "the Court

may consider a plaintiff's charges with the DHR and the EEOC that are either incorporated by

reference or otherwise integral to the complaint without converting a motion to dismiss for

failure to state a claim into one for summary judgment"); *see also, supra,* Part II of this Decision

and Order.  In that charge, Plaintiff asserts discrimination based on "Retaliation, Race," and

alleges that

> Since March 2021, I have been subjected to race-based comments.
> I made Respondent management aware of these comments.  [M]ade
> management aware of these comments on or about September 13,
> 2021 and September 20, 2021.  On or about September 13, 2021, I
> have been denied a promotion.  I believe I have been discriminated

17

and retaliated against because of my race, African American, in
violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. No. 17, Attach. 2, at 2.)  Along with his original Complaint, Plaintiff did include a copy of

the response he received from the EEOC on September 15, 2023, in which the EEOC indicated

that it had investigated specifically (a) Plaintiff's allegations of race-based comments, and (b) the

alleged retaliation in the form of denial for a promotion.  (Dkt. No. 1, at 26.)  Although neither

Plaintiff nor the EEOC explicitly mention a hostile work environment, his allegation that he had

been subjected to race-based comments between March 2021 and September 2021 could be read

as plausibly suggesting that Plaintiff suggested the existence of such a racially hostile

environment, and that the EEOC explicitly investigated what Defendants did in response to

Plaintiff's complaints about those comments.  The fact that Plaintiff did not go into the level of

detail about the specifics of those comments in the EEOC charge as he later did in his Amended

Complaint does not mean the claim was not reasonably raised.  Based on this fact, the Court

finds that the hostile work environment claim is within the scope of the EEOC charge, and the

Court may rightfully consider it as part of this action.  However, as with the other Title VII

claims, the scope of that claim is bounded by the timeliness requirements, unless Plaintiff meets

the criteria of the continuing violation doctrine.

Second, Defendants have asserted that certain factual allegations in Plaintiff's Amended

Complaint are time-barred related to Plaintiff's Title VII discrimination and retaliation claims

because they occurred more than 300 days before when he submitted his EEOC charge.  Plaintiff

filed his charge with the NYSDHR/EEOC on June 22, 2022, which means that, absent

application of the continuing violation doctrine, incidents occurring before August 26, 2021, are

not timely and cannot be used as the basis for either one of those claims.  *See Nat'l R.R.*

18

*Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (noting that, in the case of a discrete retaliatory or discriminatory act, a party "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it"). Indeed, "discrete acts that fall within the statutory period do not make timely acts that fall outside the time period," even where untimely acts are related to timely acts alleged in a timely filed charge. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 112.

As to the Section 1983 hostile work environment claim, Defendants are correct that the statute of limitations applicable to such claim in New York is three years. *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023) (citing *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 [2d Cir. 2020]). Plaintiff filed his original Complaint on December 14, 2023, which means that only allegations occurring on or after December 14, 2020, could conceivably be considered timely. However, the continuing-violation doctrine can apply to claims brought pursuant to Section 1983. *See Ugo-Alum v. New York State Dep't of Motor Vehicles*, 23-CV-7458, 2024 WL 3553168, at *13 (S.D.N.Y. July 26, 2024) (citing *Shomo v. City of New York*, 579 F.3d 176, 182 [2d Cir. 2009]; *Lucente*, 980 F.3d at 309). Moreover, in the Second Circuit, "time-barred evidence regarding non-discrete acts—including lack of training, evaluations, and discipline—are admissible to prove a hostile work environment claim under the continuing violation doctrine," as long as "'all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" *Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 542 (2d Cir. 2020) (quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 [2d Cir. 2019]). As a result, in assessing the merits of any Section 1983 claim, the Court would not necessarily be bound to considering only timely

allegations, but rather may consider any allegations of non-discrete conduct that are part of the same unlawful employment practice as a timely act.

Similarly, as to the Section 1981 hostile work environment claims, the statute of limitations applicable to such a claim is four years. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 [2004]). This means that only allegations occurring on or after December 14, 2019, could conceivably be considered timely. However, the continuing-violation doctrine also applies to Section 1981 claims. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 n.10 (S.D.N.Y. 2016) (noting that the same standard for a continuing violation applies to both Title VII and Section 1981 claims).

> 1.    **Title VII Discrimination and Retaliation Claims Against Defendant Department of Human Resources**

As discussed above, the only remaining discrimination and retaliation claims are against Defendant Department of Human Resources. Plaintiff does not appear to allege that Defendant Department of Human Resources itself directly discriminated or retaliated against him, but rather alleges that he made numerous complaints about the alleged conduct of his co-workers and supervisors, including to Defendant Department of Human Resources, yet the Albany County Department of Social Services and the Child Enforcement Unit "failed to take prompt and appropriate remedial action to prevent or correct further harassment and discrimination."[7] (Dkt. No. 8, at 264-80.)

---

[7]    The Court notes that, although Plaintiff did not name the Albany County Department of Social Services as a Defendant in this action, he does, as noted, assert that it failed to adequately respond to his complaints. The Court will consider Plaintiff's allegations regarding the response

As discussed above, as to Plaintiff's Title VII claims, only allegations of conduct from on or after August 26, 2021, are automatically considered to be timely. The timely conduct Plaintiff has alleged is sparse. He alleges generally that, up until October 2021 when Plaintiff went out of work for a work-related injury, Defendant Dudek "continued to treat [him] like a second class citizen" and spoke to him "in a condescending manner of superiority" when reminding Plaintiff he was Plaintiff's Coordinator. (Dkt. No. 8, at ¶ 111.) He further alleges that in September 2021, Defendant McCarthy wrote to the Deputy Commissioner of the Albany County Department of Social Services stating that he felt Plaintiff was a threat to himself and others, a letter that was later forwarded to the EEOC as part of the Defendants' response to his EEOC charge. (*Id.* at ¶¶ 222-30.) Plaintiff alleges that Defendant Mateo engaged in similar conduct by writing a letter in which she made false assertions about Plaintiff's behavior, including that Plaintiff had been moving things on her desk. (*Id.* at ¶¶ 231-35.) Relatedly, Plaintiff alleges that, in October 2021, unspecified Child Support Enforcement Unit Employees had provided documentation to the Executive Deputy Commissioner of the Albany County Department of Social Services that they were concerned about Plaintiff's behavior during the period between March 2021 through September 2021, and that Defendants McCarthy, Comithier, Lombardo, Berlin/Satalino, Poland, and Mateo all provided false and misleading statements to the EEOC regarding Plaintiff's charge of discrimination. (*Id.* at ¶ 249.) Plaintiff further alleges that, during that relevant period of time, he had been required to "pursue a respondent who tied up his

---

of the Albany County Department of Social Services here as well out of special solicitude to Plaintiff's *pro se* status.

tenants, placed a pillow case over their heads and dumped their bodies in a cemetery." (*Id.* at ¶ 250.)

The above alleged conduct is insufficient to support a claim of either discrimination or retaliation. "To bring a discrimination claim under Title VII . . ., a plaintiff must allege that '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Jacobs v. Hudson Valley Family Physicians, PLLC*, 725 F. Supp. 3d 235, 245-46 (N.D.N.Y. 2024) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 [S.D.N.Y. 2020]). For the purposes of a discrimination claim, "[w]e define an adverse employment action as a materially adverse change in the terms and conditions of employment." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 [2d Cir. 2004]). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). These include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry*, 336 F.3d at 138. "At the motion to dismiss stage, plaintiffs need not allege facts to demonstrate defendant's discriminatory motive," but rather "are only required to plausibly allege the existence of a prima facie case of discrimination to trigger the presumption that defendant discriminated against them." *Jacobs*, 725 F. Supp. 3d at 246 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 [2d Cir. 2015]).

Plaintiff's discrimination claim does not meet the above requirements because he has failed to plausibly allege that he suffered any adverse employment action. Plaintiff does not allege that the above-described timely conduct resulted in any materially adverse change in the terms and conditions of his employment. Of note, although Plaintiff alleges that he had to stop working in or after October 2021, he specifically alleges that his absence was because he "suffered a work related injury with a pit bull dog while serving a child support summons." (Dkt. No. 8, at ¶ 23.) He does not allege that Defendants' conduct had anything to do with that absence, or that the statements made by his co-workers and/or supervisors to the Albany County Department of Social Services and/or the EEOC resulted in any consequence to the terms and conditions of his employment. As a result, the timely alleged conduct is insufficient to state a claim for discrimination under Title VII.

However, that does not end the Court's analysis because Plaintiff has also argued that the continuing-violation doctrine should be applied to his claims. Generally, the continuing-violation doctrine applies only where a plaintiff has alleged "'a series of separate acts that collectively constitute one unlawful [] practice.'" *Herrera v. Syracuse Univ.*, 24-CV-0245, 2025 WL 874734, at *7 (N.D.N.Y. Mar. 20, 2025) (Nardacci, J.) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 [2d Cir. 2004]). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Further, in order for the doctrine to apply, a plaintiff must show that "an act contributing to that [violation] took place within the statutory time period." *Basdeo v. New York City Transit Auth.*, 2022 WL 4121379, at *4 (E.D.N.Y. Sept. 9, 2022) (quoting *Sant v. Stephens*, 821 F. App'x 42, 45 [2d Cir. 2020]).

As an initial matter, the Court finds that the conduct Plaintiff alleges regarding Defendant Sidoti specifically is clearly not related to the timely conduct and cannot be brought into consideration by the continuing-violation doctrine related to any of Plaintiffs claims. Plaintiff alleges that Defendant Sidoti repeatedly threatened him and attempted to physically assault him, among other things. (Dkt. No. 8, at 27.) However, Defendant Sidoti was transferred from Plaintiff's department and was no longer his supervisor after May 2019, so that conduct stopped years before Plaintiff filed his EEOC charge; and there is no reasonable link between Defendant Sidoti's remote conduct and any of the allegations related to the actions of the other Defendants, much less between Defendant Sidoti's conduct and specifically the timely conduct. As a result, Defendant Sidoti's conduct cannot be considered to be part of any sort of continuous and concerted unlawful practice related to the timely conduct.

Other untimely conduct that Plaintiff alleges includes the following: (a) Defendant Dudek telling him after he was hired in December 2015 that he was the first Black man hired in the Child Support Enforcement Unit in twenty-five years, and that, after he was hired, "a lot of people" stopped talking to Defendant Dudek; (b) in December 2016, Plaintiff observed co-worker Defendant McCarthy "parading around" a *National Enquirer* magazine (which he left on a conference table for three days) that had depictions of Ku Klux Klan cross burnings; (c) on an unknown date, Defendant McCarthy "allegedly displayed a Confederate Flag on the front of his car" while it was in the employee parking lot (which he was told to remove); (d) between May 2019 and September 2021, Defendant Dudek treated Plaintiff "like a second class citizen and a Black Lives Mater protestor," and made comments such as that he had voted for Donald Trump, asking Plaintiff why he would not move from his "bad neighborhood," and that he wanted to see

Plaintiff's "Arbor Hill/West Hill boxing skills"; (e) on or about May 14, 2018, Defendant Dudek encouraged Plaintiff not to go near any Black Lives Matter protests because he was worried people would know Plaintiff worked for him; (f) in March 2020, Plaintiff was told to go home because there was no work to do as a result of court closures, despite the fact no other co-worker was asked to go home; (g) in May 2020, Defendant Dudek made comments to Plaintiff to the effect that "I know how to get rid of the Black Lives Matter protestors.  The same way the Nazis got rid of the Jews.  Except now the Blacks are the Nazis and the Whites are the Jews.  You're trying to get rid of White people," and mentioned that he collected Nazi memorabilia; (h) in June 2020, Plaintiff requested use of a county car, which was refused (notably, others in his unit did not use county cars for serving petitions); (i) sometime in July 2020, Plaintiff's co-workers were moving things around on his desk; (j) in March 2021, following implicit bias training, Defendant Donlon began greeting some of Plaintiff's co-workers by saying "hey, racist!," for which Defendant Comithier later apologized to Plaintiff when he overhead and expressed discomfort; (k) on April 20, 2021, Defendant Inco whistled "We Shall Overcome" as he walked by Plaintiff's desk; (l) in May and June of 2021, Plaintiff assigned to serve a child support petition to a mother of a deceased child related to that deceased child, which was later determined to have been generated with wrong information by Defendant Inco; (m) in June 2021, Defendant Lombardo "repeatedly" sang another song typically associated with the civil rights movement to Plaintiff; and (n) on or about July 15, 2021, Defendant Comithier said to Plaintiff "you would complain if they hung you with a new rope" in response to Plaintiff's complaints, and explained that was something her father used to say.  (*See e.g.*, Dkt. No. 8, at ¶¶ 24-25, 30, 60-61, 72, 75-77, 96, 108, 114, 116, 135-36, 158-63, 168, 182-83, 187, 191, 193, 239, 250-53.)  Plaintiff also

alleged that Defendant Comithier told him "you dress nice, you talk nice but those braids, they have got to go[;] you have to do something about your hair," but it is not clear when that statement was made. (Dkt. No. 8, at ¶ 93.)

The above allegations, although many relate to race generally and sometimes specifically to Plaintiff's race, simply do not suggest a continuous and concerted unlawful practice that connects with timely alleged conduct. Many appear to be isolated statements or actions by various different individuals; and, most importantly, the alleged untimely statements and actions do not appear related to the alleged timely actions. There is simply no continuity between Defendant McCarthy's actions of leaving a magazine with pictures of the Ku Klux Klan, purportedly having a Confederate flag on his car and making statements that suggest he is racist or antisemitic (all of which appear to have occurred between 2016 and 2020 and were not generally alleged to have been specifically directed at Plaintiff), and the timely conduct of writing an email to Albany County Department of Social Services about Plaintiff's behavior in 2021.[8] As to timely conduct by Defendant Mateo, Plaintiff does not allege that she was involved in any conduct prior to writing the alleged letter.[9] Lastly, as to Defendant Dudek, Plaintiff's allegations that he was treated "like a second class citizen" and was spoken to condescendingly do not somehow render what appear to be infrequent, isolated statements about Black Lives

---

[8]     To the extent Plaintiff alleges in a conclusory manner that Defendants Comithier and Lombardo also wrote letters to the EEOC containing false and misleading statements, the continuing-violation doctrine does not apply to their untimely conduct for much the same reasons as related to Defendant McCarthy.

[9]     This is also generally true to the extent Plaintiff alleges that Defendants Poland and Berlin/Satalino also made false statements to the EEOC. (Dkt. No. 8, at ¶¶ 255, 311.)

Matter protestors, Nazis, Jews, and implications about the nature of the neighborhood where Plaintiff lived (no matter how inappropriate for a workplace) into a continuous and concerted unlawful practice.[10]

Moreover, Plaintiff himself alleges that, as early as June or July 2020, he was expressing dissatisfaction with the way he was being treated, particularly by Defendant Dudek, and that he filed a complaint with Defendant Department of Human Resources alleging retaliation and hostile work environment by Defendant Dudek. (Dkt. No. 8, at ¶¶ 122-125.) This plausibly suggests that Plaintiff believed by that time that he was being subjected to retaliatory or discriminatory conduct, yet he did not file an EEOC charge until approximately two years later. This fact also cautions against application of the continuing-violation doctrine related to any untimely actions, especially related to Defendant Dudek's alleged actions. *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) (noting that the doctrine "provides an 'exception to the normal knew-or-should-have-known accrual date'"); *McKinnies v. City of New York*, 23-CV-2567, 2024 WL 4333703, at *5 (E.D.N.Y. Sept. 27, 2024) (noting that the doctrine should be applied only in compelling circumstances, which includes "situations in which the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred, or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness") (quoting *Prince v. Cnty. of Nassau*, 837 F. Supp. 2d 71, 95 [E.D.N.Y. 2011], *aff'd,* 563 F. App'x 13 [2d Cir. 2014]). Because Plaintiff's own factual allegations therefore

---

[10]    Alternatively, even if the Court were to find Defendant Dudek's conduct sufficiently related to be part of a pattern or practice related to his timely conduct, his making of various statements indisputably does not rise to the level of any sort of adverse employment action, and thus would not result in any different finding regarding whether Plaintiff has plausibly stated a claim of discrimination.

plausibly suggest that he became aware of conduct that he considered discriminatory, harassing, or retaliatory well before he filed his EEOC charge, the Court finds that this is not a case where Plaintiff was prevented by lack of recognition from filing such a charge sooner in order to pursue his rights as to these earlier, untimely alleged actions. For all of these reasons, the Court declines to apply the continuing-violation doctrine to Plaintiff's discrimination and retaliation claims, noting that, of course, the untimely allegations may still be considered by the Court as background context for the timely aspects of his claims. *See Morgan*, 536 U.S. at 113 (noting that a plaintiff is not barred from using prior untimely acts as background evidence in support of a timely claim). As a result, Plaintiff's Title VII discrimination claim against Defendant Department of Human Resources must be dismissed for failure to allege facts plausibly suggesting any adverse employment action.

Plaintiff's retaliation claim requires additional analysis, because it is subject to a slightly different standard related to what constitutes an adverse action. "To bring a retaliation claim plaintiffs must plausibly allege '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jacob*, 725 F. Supp. 3d at 246-47 (quoting *Krul v. DeJoy*, 705 F. Supp. 3d 5, 59 [N.D.N.Y. 2023]). An adverse employment action, for the purposes of this claim, "is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 [2006]). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," and is not "limited to

discriminatory actions that affect the terms and conditions of employment.'" *Vega*, 801 F.3d at

90 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 64).

Plaintiff explicitly alleges that Defendants retaliated against him for the protected activity

of informing the Albany County Division of Affirmative Action "about discrimination and

harassment based on his race." (Dkt. No. 8, at ¶ 274.) It is not clear precisely when this

protected activity occurred. The Amended Complaint indicates that Plaintiff filed a complaint

against Defendant Sidoti on or about December 4, 2018, which alone is clearly not timely. (Dkt.

No. 8, at ¶¶ 97.) He appears to have made another complaint about being "treated like a second-

class citizen" in June or July of 2020, which appears to have been about being denied the use of a

county car, which, again, is not timely. (Dkt. No. 8, at ¶¶ 117-18.) He also alleges that he filed a

complaint with the Department of Human Resources and/or Division of Affirmative Action

related to "on-going retaliation from my immediate supervisor, Edward Dudek" as well as one

related to hostile work environment, on or about July 9, 2020, followed by another complaint on

July 17, 2020, related to more conduct by Defendant Dudek, all of which resulted in unspecified

retaliation from Defendant Dudek. (Dkt. No. 8, at ¶¶ 122, 124-25.) He made further complaints

about that harassment in September and October 2020, as well as a complaint on or about March

25, 2021, against Defendant Donlon related to him greeting other coworkers with "hey, racist!"

within Plaintiff's hearing. (Dkt. No. 8, at ¶¶ 140-41, 156-61.) These protected activities, as well

as any associated allegedly retaliatory adverse actions, are again untimely, and none of the timely

actions can be reasonably construed as having being taken as retaliation for these earlier

instances of protected activity.[11]  Moreover, Plaintiff's allegations generally plausibly suggest that someone (whether Defendant Department of Human Resources or another entity or individual) considered those complaints and did not take any negative action against Plaintiff as a result of his complaints.  (Dkt. No. 8, at ¶¶ 126, 128-34, 166.)

Regarding timely conduct, Plaintiff appears to allege that he "generated" four emails in August and September 2021, though he does not state what the content of those emails was. (Dkt. No. 8, at ¶ 225.)  He further alleges that Defendant McCarthy "used" one of these emails to draft a letter to the Deputy Commissioner of Albany County Department of Social Services, and in particular "used Mr. Perry's words and language to articulate his letter . . . as if they were his own" to say that he felt Plaintiff was "a threat to himself and others" and had displayed this type of behavior for years.  (Dkt. No. 8, at ¶¶ 226-230.)  Defendant Mateo allegedly engaged in the same conduct.  (Dkt. No. 8, at ¶¶ 231-34.)  Further, these and other statements by Defendants to the effect that Plaintiff's behavior was concerning were provided to the Deputy Commissioner on or about October 25, 2021, and were forwarded to the EEOC related to a complaint Plaintiff had filed.[12]  (Dkt. No. 8, at ¶¶ 249, 254-55.)

---

[11]    The Court additionally notes that relevant alleged actions taken against Plaintiff throughout the time period following these complaints (which are discussed in various places throughout this Decision and Order) do not rise to the level of an adverse employment action (even under the broader standard applicable to retaliation claims), because they are not the type of conduct that would dissuade a reasonable person from reporting discrimination (and, indeed, did not dissuade Plaintiff from continuing to file complaints and make reports about discrimination).

[12]    Plaintiff does not allege the date he filed this apparent earlier EEOC charge, but this charge cannot be the one that provided the right to sue in this action, because the charge that provided the right-to-sue notice relied upon here is dated June 22, 2022, after the conduct alleged in the Amended Complaint.  (Dkt. No. 17, Attach. 2, at 2.)  The Court therefore construes these

Although Plaintiff's emails in August and September of 2021 could *potentially* constitute protected activity (to the extent he appears to allege they were intended to be sent to the Department of Social Services and/or Defendant Department of Human Resources), his allegations are simply insufficient to *plausibly* allege that fact. Specifically, without any indication of what the content of those emails was, it is impossible for this Court to assess whether they contained reports of conduct that would be related to a violation of Title VII. Plaintiff notably attaches multiple emails to the Amended Complaint, but does not include any of these four alleged emails from August and September of 2021. Nor does the Amended Complaint even make wholly clear that Plaintiff actually sent those emails, as he alleges merely that he "generated" them. (Dkt. No. 8, at ¶ 225.) Further complicating this issue, the wording of Plaintiff's allegation renders it unclear whether he "generated" those emails *to* the listed individuals (who include Jennifer Clement with Defendant Department of Human Resources), or whether Defendant McCarthy took those emails to the listed individuals himself (as opposed to Plaintiff sending them). (Dkt. No. 8, at ¶ 225.)[13] Even drawing all reasonable inferences in favor of Plaintiff, the relevant factual allegations cannot be reasonably construed as plausibly suggesting that these actions constituted a protected activity.

---

factual allegations as plausibly suggesting that Plaintiff had filed a different EEOC charge at some point before October 2021.

[13] The text of the relevant allegation reads as follows: "On/or about September 2021 Stephen McCarthy took one of the e-mails that the Plaintiff, Mr. Perry had generated on August 20, 2021, September 3, 2021, September 23, 2021 and/or September 30, 2021 to Erin Stachewicz, Deputy Commissioner, Albany County Department of Social Services (ACDSS), Sarah Seymour, Deputy Commissioner, Albany County Department of Human Resources or Jennifer Clement, Commissioner, Albany County Department of Human Resources." (Dkt. No. 8, at ¶ 225.)

In the alternative, the Court finds that Plaintiff has not plausibly alleged that a relevant employer Defendant knew about his engagement in any timely protected activity. Plaintiff notably did not name the Albany County Department of Social Services (the entity he worked for) as a defendant in this action. To the extent that Defendant Department of Human Resources (as the only non-individual Defendant named in this action) can be considered his "employer" for the purposes of Title VII (an issue the Court need not decide at this moment), Plaintiff must allege that it was aware of his engagement in timely protected activity. As with his allegations about whether his generating of certain emails in August and September of 2021 constituted protected activity, his allegations about the recipients (or intended recipients) of those emails is unclear. Specifically, he alleges that those emails were "generated" to "Erin Stachewicz, Deputy Commissioner, Albany County Department of Social Services (ACDSS), Sarah Seymour, Deputy Commissioner, Albany County Department of Human Resources or Jennifer Clement, Commissioner, Albany County Department of Human Resources." (Dkt. No. 8, at ¶ 225.) There again is a question of whether these emails were actually sent to the intended recipients, but also Plaintiff's use of "or," which raises the question of whether Plaintiff ever sent those emails to either individual in the Human Resources Department. As discussed previously, these emails were not among others attached to the Amended Complaint, and the Court cannot ascertain with any plausibility to whom of the three individuals listed (if any) Plaintiff did or did not send the alleged emails and thus cannot determine whether Defendant Department of Human Resources might have been aware of any complaints regarding violations of Title VII that such emails might have contained. There are also no allegations that, if the Department was aware of any protected activity in that respect, it took any adverse action against Plaintiff in response.

32

Plaintiff indeed provides no allegations regarding the Department's response to those emails (if they contained complaints regarding conduct made unlawful by Title VII and were indeed sent to Defendant Department of Human Resources).

The Court does note that Plaintiff's Amended Complaint appears to suggest that he had filed an EEOC charge earlier than the one that provided the right to sue in this case, as discussed above in note 12 of this Decision and Order. The filing of an EEOC charge can constitute a protected activity. *See Quarless v. Brooklyn Botanic Garden Corp.*, 611 F. App'x 28, 29 (2d Cir. 2015) (acknowledging that a complaint made to the EEOC was a protected activity). However, even if the Court considers this to constitute a protected activity in this case (despite there being few details about when such charge was filed), Plaintiff still has not alleged facts plausibly suggesting that Defendant Department of Human Resources took any subsequent adverse action against Plaintiff as a result of that or any other protected conduct. Granted, he alleges generically that the letters of Defendant McCarthy and Mateo that falsely stole allegations from his own emails were later sent to the EEOC as part of "Albany County's" answer to his EEOC charge. (Dkt. No. 8, at ¶ 227.) However, he does not allege that it was Defendant Department of Human Resources who engaged in that conduct, much less that it did so related to his engaging in any timely protected activity of which it was aware.[14] Specifically, even if some of Plaintiff's allegations could be construed as alleging that Defendant Department of Human Resources submitted the other Defendants' false statements to the EEOC as part of

---

[14]    Indeed, Plaintiff alleges that the letters written by Defendant McCarthy, Defendant Mateo, and others were sent specifically to the Deputy Commissioner of the Department of Social Services, not any individuals at Defendant Department of Human Resources. (Dkt. No. 8, at ¶¶ 226-29, 249.)

their requested position statement on Plaintiff's charge (Dkt. No. 8, at ¶¶ 254-55), he does not allege that Defendant Department of Human Resources was aware of the falsity of any of those letters or that the individual defendants who submitted those letters might have been acting out of retaliation against Plaintiff, much less that Defendant Department of Human Resources was aware of any such retaliation and failed to address it. As a result, Plaintiff has not alleged facts plausibly suggesting that Defendant Department of Human Resources engaged in any timely retaliatory conduct related to a protected activity.

For all of the above reasons, Plaintiff's Title VII discrimination and retaliation claims against all Defendants must be dismissed for failure to state a claim upon which relief can be granted.

### 2.    Title VII, Section 1981, and Section 1983 Hostile Work Environment Claims

As discussed above, because Title VII claims cannot be asserted against individual defendants, Plaintiff's only remaining claim for a hostile work environment under Title VII is against Defendant Department of Human Resources. By contrast, the hostile work environment claims under Section 1981 and (to the extent applicable) Section 1983 also remain against the individual Defendants. (Dkt. No. 8, at ¶¶ 286-92.)

### a.    Claims Against Defendant Department of Human Resources

Plaintiff does not appear to assert any factual allegations plausibly suggesting that Defendant Department of Human Resources directly engaged in any of the conduct that Plaintiff alleges to be harassing or which created the alleged hostile work environment, but rather appears to imply that the Department should be held liable for the actions of Plaintiff's co-workers and supervisors in the Child Support Enforcement Unit.

34

"[T]o hold an employer liable for [] a hostile work environment, federal law requires the plaintiff to show 'a specific basis for imputing the conduct creating the hostile work environment to the employer.'" *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90-91 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 [2d Cir. 2013]). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "To demonstrate such negligence, a plaintiff must adduce evidence 'that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Bentley*, 935 F.3d at 92 (quoting *Summa*, 708 F.3d at 124). If the employee is a supervisor, the employer's level of liability is dependent on whether that supervisory employee took a tangible employment action against the plaintiff: if a tangible employment action was taken, the employer is strictly liable, but if not, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent or correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424 (citing *Faragher v. Boca Raton*, 524 U.S. 775, 807 [1998]; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 [1998]). A supervisor is an employee who "is empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 424.

According to Plaintiff's allegations, Defendants Dudek, Comithier, and Sidoti were supervisors, while Defendants McCarthy, Inco, Lombardo, Poland, Berlin/Satalino, and Mateo were co-workers. However, the Court need not assess whether Plaintiff has sufficiently alleged

the relevant standards to impute liability onto Defendant Department of Human Resources related to those individuals' conduct, because Plaintiff has not met the threshold requirement of plausibly alleging the existence of a hostile work environment.

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected characteristic].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 [2d Cir. 2001]).  In assessing whether the work environment is objectively hostile, a court should consider factors such as "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 [1993]).  "[T]o avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 [2d Cir. 2003]).

Before applying the above legal standards to Plaintiff's allegations in the Amended Complaint, the Court must first assess the scope the conduct to be considered as actionable for this claim.  Plaintiff's Title VII hostile work environment claim is subject to the same 300-day timeliness period as his discrimination and retaliation claims, but is also subject to the continuing

violation doctrine.  Plaintiff's hostile work environment claims are based primarily on an assertion that the various Defendants' racist or racially motivated comments were so harassing that they created a hostile work environment.

In order for the Court to consider alleged incidents contributing to the hostile work environment that fall outside the statutory time period, there must be "an act contributing to the claim [that] occurs within the filing period," meaning an act that is part of the same unlawful employment practice and sufficiently related to the timely conduct.  *Smith v. National Grid USA*, 2025 WL 1248676, at \*8-9 (E.D.N.Y. Apr. 30, 2025) (citing *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 [2d Cir. 2023]; *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 [2d Cir. 2019]); *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 92 [2d Cir. 2014]).  Factors for assessing whether conduct is similar for these purposes include "'(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action.'"  *Smith*, 2025 WL 1248676, at \*9 (quoting *Bonterre v. City of New York*, 18-CV-0745, 2021 WL 4060358, at \*3 [S.D.N.Y. Sept. 7, 2021]).  "As the Supreme Court has stated, 'mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.'"  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 [1993]).  Rather, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,'" and instead "'there must be a steady barrage of opprobrious racial comments.'"  *Schwapp*, 118 F.3d at 110 (quoting *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 [2d Cir. 1986]; *Bolden v. PRC*

37

*Inc.*, 43 F.3d 545, 551 [10th Cir. 1994]).  "Thus, whether racial slurs constitute a hostile work environment typically depends upon 'the quantity, frequency, and severity' of those slurs." *Schwapp*, 118 F.3d at 110-11 (quoting *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164 [7th Cir. 1994]).  "'When analyzing severity, a court must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe as to alter the conditions of employment.'"  *Barton v. Warren Cnty.*, 19-CV-1061, 2020 WL 4569465, at *10 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) (quoting *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 780-81 [S.D.N.Y. 2019]).

As noted previously, the only allegations regarding actions taken after August 26, 2021, are that (a) various Defendants provided false statements about Plaintiff and his behavior to the Albany County Department of Social Services and/or the EEOC, (b) Defendant Dudek continued to treat him like a "second class citizen" and spoke to him in "a condescending manner of superiority," and (c) at some point between March 2021 through September 2021, he had been required to "pursue a respondent who tied up his tenants, placed a pillow case over their heads and dumped their bodies in a cemetery."  The allegation regarding making false statements has no connection to any of the other allegations in Plaintiff's Amended Complaint, and at least one of the alleged individuals who made those false statements (Mateo) was not identified as being involved in any conduct against Plaintiff previously.  Similarly, the fact that Plaintiff has alleged that on a few occasions he has been assigned to serve petitions to individuals who turned out to be threatening or potentially dangerous does not suggest any sort of pattern of harassing conduct, because (a) these incidents appear to have been isolated and sporadic, and (b) Plaintiff has not included any allegations plausibly suggesting that he was given those assignments intentionally

to harass him or because of his race, but rather they appear to be examples of why Plaintiff thought it was wrong that Defendant Dudek denied his request to use the county car rather than his personal vehicle while serving petitions near the neighborhood where he lived. (Dkt. No. 8, at ¶¶ 207-16.) Plaintiff notes another incident from May or June 2021 in which he was assigned to serve a petition on a mother for a deceased child, but admits that, at a meeting, it was explained that Defendant Inco had generated the petition using the wrong information, and he makes no other allegations to suggest that he was assigned to a faulty petition to harass him as opposed to as a routine matter of case assignments. (Dkt. No. 8, at ¶¶ 251-53.) The only allegation that appears to have any connection with the untimely racial statements is related to Defendant Dudek treating him like a second-class citizen, but Plaintiff offers no elaboration regarding what conduct Defendant Dudek actually engaged in specifically during the relevant time.[15] Because there does not appear to be a pattern or connection between the timely alleged conduct and the untimely alleged conduct, the Court finds that the continuing-violation doctrine should not be applied here related to Plaintiff's Title VII claim.

As to Plaintiff's Section 1983 claim, the Court previously noted that there is a longer window of timeliness, with allegations occurring on or after December 14, 2020, falling within that period. In addition to the conduct that was timely for the Title VII claim, conduct that has

---

[15]    In a different area of the Amended Complaint, Plaintiff alleges that, "[f]rom May 2019 until September 2021, Edward Dudek treated Mr. Perry like a second class citizen and a Black Lives Matter protestor. Edward Dudek said, 'Jesse, you know that I voted for Donald Trump. Your neighborhood has always been bad. Why don't you move?'" (Dkt. No. 8, at ¶ 72.) Plaintiff additionally alleged elsewhere that, in June 2020, he complained that he was tired of being treated like a second-class citizen after being asked by multiple people why he wouldn't move from his neighborhood after he had multiple requests to use a county car denied. (Dkt. No. 8, at ¶¶ 116-17.)

been timely alleged related to the Section 1983 claim includes the following: (a) in March 2021, following implicit bias training, Defendant Donlon began greeting some of Plaintiff's co-workers by saying "hey, racist!," for which Defendant Comithier later apologized to Plaintiff when he overhead and expressed discomfort, (b) on April 20, 2021, Defendant Inco whistled "We Shall Overcome" as he walked by Plaintiff's desk, (c) in May and June of 2021, Plaintiff was assigned to serve a child support petition to a mother of a deceased child related to that deceased child, which was later determined to have been generated with wrong information by Defendant Inco, (d) in June 2021, Defendant Lombardo "repeatedly" sang another song typically associated with the civil rights movement when around Plaintiff, and (e) on or about July 15, 2021, Defendant Comithier said to Plaintiff "you would complain if they hung you with a new rope" in response to Plaintiff's complaints, and explained it that was something her father used to say.

Again, although much of this timely conduct does touch upon race in some fashion, there is little connection between that conduct and the remaining untimely conduct. The Amended Complaint does not appear to contain allegations regarding any earlier similar conduct by Defendant Inco, Defendant Lombardo, or Defendant Donlon.[16] Indeed, much of the earlier relevant conduct relates to Defendant Dudek or Defendant McCarthy (or Defendant Sidoti, whose conduct, for reasons already discussed, is entirely unrelated to the timely alleged conduct even as to the Section 1983 claim), with the exception of an undated statement from Defendant Comithier related to Plaintiff's hair (which the Court will consider out of special solicitude to the

---

[16]    There is an allegation that, in May 2020, Defendant McCarthy made a remark to Defendant Donlon to the effect that "I'm surprised that after all of the things that have said about Nazis and Jews, we have not been kicked off Facebook," but there is no conduct alleged by Defendant Donlon related to this incident. (Dkt. No. ¶ 110.)

*pro se* Plaintiff).  Even the conduct of Defendant Dudek and McCarthy is so sporadic as to not plausibly suggest a continuous pattern of conduct.  For all these reasons, the Court finds that, even with the expanded range of timely conduct, the continuing-violation doctrine should not be applied to Plaintiff's Section 1983 claim, because the untimely conduct is not sufficiently related to the timely conduct.

That being said, even if the Court were to consider the relevant untimely allegations that could arguably be considered related by virtue of being perpetrated by the same individuals as later timely conduct, Plaintiff has not alleged facts plausibly suggesting that he was subjected to an *objectively* hostile work environment.  As detailed above in Section III.C.1, the allegations all the way back to 2015 consist of fairly sporadic incidents of various supervisors and co-workers making statements or engaging in conduct that implicates race in some way, as well as a few allegations that are not overtly related to race, such as denying Plaintiff use of a county car or assigning him to deliver summons to persons who were potentially dangerous (or, in one case, mistakenly to a mother whose child that was the subject of the petition was deceased).  These statements and conduct are not objectively threatening or humiliating, even if most are in poor taste and inappropriate for the workplace.  There have been no allegations of physical threats or intimidation (outside of the conduct of Defendant Sidoti, which, as already discussed, the Court finds to be completely unrelated to any timely conduct alleged as to any of the various claims).  Nor was this conduct particularly frequent or severe; although Plaintiff does allege a greater frequency of comments particularly in 2021, they consist of small things, such as Defendant Donlon jokingly greeting Defendant Comithier with "hey, racist!" following implicit bias training, two employees humming or singing portions of songs associated with the civil rights

41

movement on two occasions when Plaintiff was nearby, and Defendant Comithier using a phrase

in conversation that could be construed as implicating Plaintiff's race. Plaintiff does not allege

that Defendants referred to him or any other individual by racial slurs in the workplace. Nor has

Plaintiff alleged facts to plausibly suggest that this sporadic conduct unreasonably interfered with

his work performance or otherwise altered the conditions of his employment for the worse other

than that it made him subjectively uncomfortable.[17] He does allege that he "was unable to work

in the child support enforcement unit (CSEU) from July 2020 until October 13, 2020 due to the

hostile work environment." (Dkt. No. 8, at ¶ 139.) However, he returned to work in October

2020 (prior to any timely period in this action related to either the Section 1983 or Title VII

claims) and does not allege any need to take a leave of absence or other effects on his ability to

perform his work as a result of the alleged conduct during the timely periods.[18] Although

[17]    Plaintiff alleges that he had to take an extended leave of absence in 2019; but that leave is specifically noted to be related to the effect of Defendant Sidoti's harassment, which, as the Court has already explained, is not connected to the timely incidents of harassment and therefore is not part of the consideration here. (Dkt. No. 8, at ¶¶ 97-100.)

[18]    The Court also notes that the Amended Complaint does not contain allegations that suggest any sort of extreme conduct leading up to July 2020 when Plaintiff alleges he went on an extended leave. He was encouraged to go home in March 2020 when he was told there was not work to do due to the COVID-19 pandemic shutdowns; Defendant McCarthy allegedly made a statement about making racist and/or antisemitic comments on Facebook in conversation with Defendant Donlon, whose cubicle was next to Plaintiff's; Defendant Dudek treated him like a second-class citizen and spoke to him in a condescending manner; he was denied use of a county car and Defendant Dudek and Defendant Comithier asked him why he wouldn't move from his neighborhood; he was told he was not going to be paid for a holiday and another day because he failed to show up for work on the Friday before the holiday; Defendant Dudek told Plaintiff he had disrespected him after Plaintiff filed complaints about Defendant Dudek's retaliation; he was told he did not have any sick time left when he tried to take a day off; and he reported that his safety was in jeopardy after serving summons in his neighborhood, after which a policy was implemented that investigators should not serve petitions within three blocks of his or her residence. (Dkt. No. 8, at ¶¶ 105-07, 110, 116, 119, 125, 128-34.) None of this suggests an

certainly not appropriate, the allegations here do not consist of the type or severity of conduct that has generally been found to be sufficient regarding the existence of a hostile work environment. *See Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 234-35 (S.D.N.Y. 2023) (finding plaintiff plausibly alleged a hostile work environment where her supervisor engaged in "continuous" use of a racial slur against plaintiff and other Black employees); *Cano v. SEIU Local 32BJ*, 19-CV-8810, 2021 WL 4927166, at *6 (S.D.N.Y. June 15, 2021) (finding plaintiff raised a plausible claim of hostile work environment where he alleged frequent derogatory comments about the plaintiff's ethnicity/national origin combined with exaggerated criticisms of his performance); *France v. Touro College*, 14-CV-4613, 2016 WL 1105400, at *11-12 (E.D.N.Y. Feb. 16, 2016) (finding colorable claim of hostile work environment where the plaintiff's supervisor sent her more than 70 graphically sexual text messages and attempted to physically grab her on one occasion); *Sardina v. United Parcel Serv., Inc.*, 254 F. App'x 108, 110 (2d Cir. 2007) (finding that a supervisor's comments about "office bitches" and "Brooklyn bimbettes" and sexually suggestive comments by coworkers did not rise to the level of an objectively hostile work environment); *cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "'simple teasing' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'").

---

*objectively* hostile work environment, even if Plaintiff perceived it as subjectively hostile to the point where he took a leave of absence.

For all of the above reasons, the Court finds that Plaintiff has not plausibly stated a claim for hostile work environment against Defendant Department of Human Resources pursuant to either Title VII and Section 1983, and therefore those claims must be dismissed.

> **b.** **Claims Against the Individual Defendants Pursuant to Section 1981**

The Section 1981 claim permits the automatic consideration of an even broader range of conduct as timely. Notably, the conduct by Defendant Sidoti remains time barred, because he was removed as Plaintiff's supervisor multiple months before December 14, 2019. Plaintiff has alleged relevant facts such as the following: (a) March 2020, Plaintiff was "encouraged" by Defendant Dudek to go home because there was no work to do due to court closures caused by the COVID-19 pandemic; (b) in May 2020, Defendant McCarthy said to Defendant Donlon that "I'm surprised that after all of the things that we have said about Nazis and Jews, we have not been kicked off of Facebook"; (c) also in May 2020, Defendant Dudek made various comments about Nazis and Jews and Black Lives Matter protestors to Plaintiff, including that he collects Nazi memorabilia; (d) his requests for use of a county car were denied and he was asked by Defendant Dudek and Defendant Comithier "why don't you move?"; (e) he was denied pay for the Fourth of July holiday because he had been out of work the previous Friday; (f) in July 2020, Defendant Dudek told Plaintiff that he'd "disrespected" him by filing a complaint; and (g) from July through October 2020, Plaintiff experienced computer problems that were not resolved by Defendant Donlon. (Dkt. No. 8, at ¶¶ 105-06, 110, 114-16, 119, 125, 134-35, 146.) Again, this conduct is sporadic and each incident is seemingly unrelated to the other. This conduct is also not generally related to the earlier conduct alleged. The only conduct that might perhaps be considered related to that alleged before December 14, 2020, are similar statements made by

Defendant Dudek and actions or statements by Defendant McCarthy to those they made during the relevant time period.

However, even if the Court were to consider all the untimely conduct (excluding, again, that of Defendant Sidoti) the Court finds that for the reasons discussed in detail above related to the Title VII and Section 1983 claims against Defendant Department of Human Resources, Plaintiff has not plausibly alleged an objectively hostile work environment. As a result, for those same reasons, the Court finds that the Section 1981 claim against the various individual defendants must be dismissed.

        **c.**        **Claims Against the Individual Defendants Pursuant to Section 1983**

To state a claim pursuant to Section 1983, "a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *McCarra v. Flint*, 25-CV-0501, 2025 WL 1825559, at *3 (N.D.N.Y. July 1, 2025) (Dancks, M.J.) (Report-Recommendation) (quoting *Whalen v. Cnty of Fulton*, 126 F.3d 400, 405 [2d Cir. 1997]). "Private actors 'may only be held liable under Section 1983 where the conduct at issue constitutes state action[—]which only occurs where the challenged action of a private party is fairly attributable to the state.'" *McCarra*, 2025 WL 1825559, at *3 (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 504 [N.D.N.Y. 2017] [Hurd, J.]). The actions of a private party can be considered to be state action in three situations: (1) "the private party used the coercive power of the state or is controlled by the state"; (2) "the private party willfully participates in joint activity with the state or its functions are entwined with state policies"; or (3) "the state has delegated a public function to the private party." *Phillips v. Schenectady Child*

*Support Unit*, 24-CV-0853, 2025 WL 895035, at *14 (N.D.N.Y. Mar. 24, 2025) (Evangelista, M.J.), report-recommendation adopted by 2025 WL 1191320 (N.D.N.Y. Apr. 24, 2025) (Sannes, C.J.). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Hanyon v. United States*, 25-CV-0212, 2025 WL 1610574, at *6 (N.D.N.Y. Apr. 15, 2025) (Dancks, M.J.), report-recommendation adopted by 2025 WL 1502738 (N.D.N.Y. May 27, 2025) (Sannes, C.J.) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 [1990]).

Here, Plaintiff has not alleged that the harassing conduct engaged in by any of the individual Defendants constituted a state action or an action taken under the color of state law. The harassing conduct Plaintiff has alleged was not taken pursuant to any sort of official state action or even related to the positions held by any of the individual Defendants, but rather were personal in nature and engaged in on behalf of themselves as individuals. None of Plaintiffs allegations plausibly suggest that any of the individual Defendants acted either on behalf of the state or in joint action with the state related to their alleged harassment of Plaintiff. As a result, Plaintiff has not alleged facts plausibly suggesting that any of the individual Defendants acted under color of state law, and any claims against those Defendants pursuant to Section 1983 that can be inferred from the Amended Complaint must be dismissed.

### D.    Whether the Court Should Grant Plaintiff Leave to File a Motion to Amend

After careful consideration, the Court answers this question in the negative.

Plaintiff has not made any request for leave to amend, but Defendants have specifically argued that the Amended Complaint should be dismissed with prejudice and a denial of any further leave to amend. (Dkt. No. 17, Attach. 3, at 28-29.) "Ordinarily, a court should not

dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Kelly v. Miller*, 2025 WL 2301988, at *4 (N.D.N.Y. Aug. 11, 2025) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 [2d Cir. 1991]); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."). "An opportunity to amend is not required, however, where 'the problem with the plaintiff's causes of action is substantive' such that 'better pleading will not cure it.'" *Kelly*, 2025 WL 2301988, at *4 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 [2d Cir. 2000]) (internal alterations omitted). "Stated differently, 'where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'" *Kelly*, 2025 WL 2301988, at *4 (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 [2d Cir. 1993]).

Here, Plaintiff has already amended the complaint once, which involved fairly significant substantive changes and additions to his allegations. (*Compare* Dkt. No. 1 *with* Dkt. No. 8.) Moreover, the Court does not see any reason to believe that further amendment would be productive, because (a) Plaintiff's already extensive factual allegations do not show that he can plausibly state the asserted claims, and (b) if additional helpful factual allegations exist as to those claims, Plaintiff would have included them in the Amended Complaint. Even as to his retaliation claim, wherein the Court identified certain ambiguities regarding the nature of his allegations, clarification on those points would not remedy the ultimate inability to state a claim because, as the Court noted, Plaintiff has not alleged that Defendant Department of Human Resources took any adverse action against him or had any awareness of timely retaliatory actions taken against him by any of the other Defendants. Because Plaintiff has already amended his

complaint once and there appears to be no indication that further amendment would cure the defects identified above, the Court finds no reason to afford Plaintiff an opportunity to seek leave to amend in light of this Decision and Order.  Finally, because this dismissal is based entirely on Fed. R. Civ. P. 12(b)(6), and not Defendants' alternative argument under Fed. R. Civ. P. 12(b)(1), the Court need not render the dismissal without prejudice.

ACCORDINGLY, it is

ORDERED that Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 17) is **GRANTED**; and it is further

ORDERED that Plaintiff's Amended Complaint (Dkt. No. 8) is **DISMISSED**.

Dated: September 8, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge